UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD SEPULVEDA,<br><br>        Plaintiff,<br><br>    v.<br><br>LAKESHORE 76, INC., et al.,<br><br>        Defendants. | Case No. 20-cv-04635-DMR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 40 |

Plaintiff Richard Sepulveda is an individual with a disability. He filed this lawsuit against Defendants Lakeshore 76, Inc., Sam Ng, and Wendy Ng (collectively, "Lakeshore") alleging violations of the Americans with Disabilities Act of 1990 ("ADA") and related state laws. Sepulveda now moves for summary judgment, or "in the alternative, for an order treating specified facts as established." Pl.'s Mot. for Summ. J. ("Mot.") [Docket No. 40.] Lakeshore filed an opposition ("Opp'n"), and Sepulveda replied ("Reply"). [Docket Nos. 43, 45.] The court finds that this motion may be resolved on the papers without a hearing. Civil L.R. 7-1(b). For the following reasons, Sepulveda's motion is denied.

## I.  BACKGROUND

Sepulveda is an individual with a disability who suffers from lumbar disc disease and degenerative arthritis and uses a walker for mobility. Declaration of Richard Sepulveda [Docket No. 40-2.] ("Sepulveda Decl.") ¶ 1. He possesses a state-issued blue placard that allows him to park legally in parking spaces designated for persons with disabilities. *Id.* ¶ 2. Defendant Lakeshore 76 is a gas station and convenience store located at 3200 Lakeshore Avenue in Oakland, California. *Id.* ¶ 4; Declaration of Sam Ng ("Ng Decl.") [Docket No. 45-1] ¶ 2. Defendant Sam Ng has owned and operated the property since 2005 and asserts that he has never performed any construction or alterations to the premises. Ng Decl. ¶¶ 3-4.

Sepulveda states that he visited Lakeshore on January 17, April 29, June 1, and July 1, 2020 and personally encountered two access barriers. Sepulveda Decl. ¶ 4. First, Sepulveda asserts that the parking space designated for persons with disabilities was defective insofar as it lacked proper dimensions, a passenger access aisle, paint delineating the boundaries, appropriate signage, and warnings. *Id.* ¶ 4(a). Sepulveda contends that the defective parking space "caused [him] difficulties in finding a safe place to park, safely exit [his] vehicle, and reach the entrance safely"; he also feared that his walker could roll away or that he could fall when he exited his vehicle due to the insufficiently level space and access aisle. *Id.* Sepulveda expressed "legitimate concern for [his] own safety." *Id.* Sepulveda also claims that Lakeshore "regularly coned off the designated space and the access aisle" to park cars under repair at its adjoining mechanic's shop, which "deprive[d him] of the use of the parking space." *Id.*

As to the second barrier, Sepulveda claims that Lakeshore's primary entrance door lacked proper accessibility signage and was not in the direct line of sight from the accessible parking space. *Id.* ¶ 4(b). As a result, he "initially had difficulty in finding and using an accessible entrance." *Id.*

On July 12, 2021, Sepulveda filed this action for injunctive and declaratory relief under the ADA, the Unruh Civil Rights Act, the California Disabled Persons Act ("CDPA"), and the California Health and Safety Code. *See generally* Compl. [Docket No. 1.] Sepulveda seeks statutory damages under the Unruh Act and Disabled Persons Act.

On September 2, 2020, the parties conducted a joint site visit. Licensed civil engineer Roberto Cortez performed an inspection and prepared an expert report that accompanies Sepulveda's motion. *See* Declaration of Roberto Cortez [Docket No. 40-1] ("Cortez Decl."); Cortex Decl. Ex. 1 ("Cortez Report"). Cortez identifies a number of conditions at Lakeshore that do not comply with certain state and federal regulations on physical accessibility. Cortez Decl. ¶ 6. These deficient conditions relate to sidewalk access, parking lot and access aisle, retail sales counter, restroom facilities, and floor mats. *Id.* Cortez returned to the property on August 3, 2021 and declares that he could not detect any alterations made to the premises, but that he observed cones blocking the access aisle. *Id.* ¶ 7.

On June 3, 2021, Sepulveda sought leave to file a proposed first amended complaint ("FAC"), which the court denied without prejudice on July 22, 2021. [Docket Nos. 24, 39.] On August 8, 2021, Sepulveda filed this motion for summary judgment.

## II. LEGAL STANDARD

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-moving party. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine factual issue exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could return a verdict for the nonmoving party. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of material fact exists. *Devereaux*, 263 F.3d at 1076. More than a "scintilla of evidence" must exist to support the non-moving party's claims. *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477 U.S. at 252). A showing that "there is some 'metaphysical doubt' as to the material facts as issue" will not suffice. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at 587).

3

## III. DISCUSSION

### A. ADA Claim

"Title III of the ADA prohibits discrimination on the basis of disability in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation' with a nexus in interstate commerce." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (quoting 42 U.S.C. §§ 2000a(b), 12182(a)). To prevail on a Title III discrimination claim, a plaintiff must show that (1) they are disabled within the meaning of the ADA; (2) the defendant is "a private entity that owns, leases, or operates a place of public accommodation"; and (3) the defendant discriminated against the plaintiff by denying public accommodations because of the plaintiff's disability. *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020).

Unlawful discrimination under the ADA occurs when features of a public accommodation deny equal access to disabled persons:

> It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

42 U.S.C. § 12182(b)(1)(A)(i). The ADA lists five subsections describing different types of discrimination. 42 U.S.C. § 12182(b)(2)(A)(i)-(v). The subsection at issue in this case is 42 U.S.C. § 12182(b)(2)(A)(iv) ("Section IV"). Discrimination under Section IV includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals . . . where such removal is readily achievable." *Id.* Under the ADA, a plaintiff can sue only for injunctive relief, i.e., removal of any barriers. Monetary damages are not available for private plaintiffs. *Oliver*, 654 F.3d at 905.

To prove discrimination under Section IV, a plaintiff must show a violation of applicable accessibility standards. *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011) (citing *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (en banc); *Donald v. Cafe Royale*, 218 Cal. App. 3d 168, 183 (1990)). There are three categories of

4

accessibility requirements under Title III of the ADA—the 'new construction' provisions . . . ; the 'alteration' provisions . . . ; and the 'readily achievable' provisions." *Moeller*, 816 F. Supp. 2d at 847. "In the case of newly constructed facilities, compliance with the ADA's antidiscrimination mandate requires that facilities be 'readily accessible to and usable by individuals with disabilities.'" *Chapman*, 631 F.3d at 945 (quoting 42 U.S.C. § 12183(a)(1)); *see also Moeller*, 816 F. Supp. 2d at 847.[1] Existing facilities that were altered after January 26, 1992 are also required, "to the maximum extent feasible, to be 'readily accessible to and useable by' individuals with disabilities." *Moeller*, 816 F. Supp. 2d at 847 (citing 42 U.S.C. § 12183(a)(2)).[2] "In existing but unaltered facilities, barriers must be removed where it is 'readily achievable' to do so." *Id.*

To satisfy these standards, buildings with new construction and post-January 1992 alterations must comply with either the 1991 or 2010 ADA Standards for Accessible Design (ADAAG), depending on the date the construction or alterations began. 28 C.F.R. § 36.406; *see infra* Section III.A.2. For existing but unaltered facilities, "discrimination includes 'a failure to remove architectural barriers . . . where such removal is readily achievable.'" *Chapman*, 631 F.3d at 945 (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)); *see also Moeller*, 816 F. Supp. 2d at 847. 42 U.S.C. § 12181(9).

To prevail on a discrimination claim involving an existing but unaltered facility, the plaintiff must establish that alterations to the challenged barrier were readily achievable—defined as "easily accomplishable and able to be carried out without much difficult or expense," 42 U.S.C. § 12181—or that the barrier could have been made available "through alternative methods without much difficulty or expense." *Lopez*, 974 F.3d at 1034. In the context of a summary judgment motion, the Ninth Circuit applies a burden-shifting framework to establish whether removal of an

---

[1] The ADA defines newly constructed facilities as construction intended for "first occupancy later than 30 months after July 26, 1990," which was the date the ADA was enacted. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.401(a)(1) ("discrimination for purposes of this part includes a failure to design and construct facilities for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities.").

[2] The Justice Department's ADA Architectural Guidance defines alteration as "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof." *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1079 (N.D. Cal. 2014) (citing 28 C.F.R. § 36.402 App. A).

architectural barrier is readily achievable. *Id.* at 1040. First, "plaintiffs have the initial burden at summary judgment of plausibly showing that the cost of removing an architectural barrier does not exceed the benefits under the circumstances." *Id.* at 1040. If the plaintiff satisfies the burden, "[t]he defendant then bears the ultimate burden of persuasion that barrier removal is not readily achievable." *Id.* The court must then weigh the evidence under four factors enumerated in 42 U.S.C. § 12181(9) to determine if removal is readily achievable.[3] *Id.* at 1039. "Therefore, it is in plaintiffs' best interest to submit as much evidence as possible pertaining to each of the [42 U.S.C] § 12181(9) factors in their initial barrier-removal proposal . . . [o]therwise, plaintiffs risk meeting their initial burden but failing to ultimately prevail on summary judgment." *Id.*

Here, the parties do not dispute that because Sepulveda has limited mobility and uses a walker, he is disabled and satisfies the first element of an ADA Title III claim.[4] Nor do they dispute that as a gas station, Lakeshore is a place of public accommodation. *See also Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1038 (9th Cir. 2008) (considering ADA Title III claims against a gas station). Only the third element is at issue—namely, whether Lakeshore violated the applicable accessibility standards.

---

[3] These factors include:

> (A) the nature and cost of the action needed [ ];
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
> (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9)(A)-(D).

[4] Other courts in this District have also recently found that Sepulveda is disabled. *Sepulveda v. Buelna*, No. 20-cv-5258-TSH, 2021 WL 3411197, at *5 (N.D. Cal. July 17, 2021); *Sepulveda v. Cong*, No. 20-cv-2172-KAW, No. 2020 WL 7232900, at *4 (N.D. Cal. Nov. 9, 2020).

### 1. Challenged Barriers

Sepulveda declares that he encountered two barriers: (1) a "defective" designated parking space and (2) the lack of the "proper posted international symbol of Accessibility" on the "primary Business entrance door." Mot. at 8-9, 14; Sepulveda Decl. ¶ 4. Cortez independently observed parking space deficiencies. Cortez Decl. ¶ 6(a)-(h); Cortez Report at 4, 6, 8-9. Cortez does not identify any violation related to the entrance door signage. *See id.* at 20-22.

The Cortez Report also identifies violations that Sepulveda did not personally encounter but to which Sepulveda gestures in his motion— i.e., alleged problems regarding non-compliant shelving, countertop, indoor turning radius, urinal, faucet, and pipes in restroom, and floor mats. *See* Mot. at 9, 16; Cortez Decl. ¶ 6(a), (b), (j)-(q).

Lakeshore does not dispute the existence of any barriers; rather, it contends that they did not practically deny Sepulveda full and equal access. Opp'n at 3. Lakeshore points to the receipts attached to Sepulveda's declaration as evidence that Sepulveda was sufficiently able to enter the gas station and make purchases. *Id.* Lakeshore acknowledges that the cross-slopes of the parking stall exceeded the 2010 ADAAG standards but only by a "minimal amount" of 1.8%. *Id.*

Lakeshore misstates the standard to establish a discriminatory barrier under the ADA. A barrier need not "completely preclude the plaintiff from entering or from using a facility in any way"; it "need only interfere with the plaintiff's 'full and equal enjoyment' of the facility . . . on account of his particular disability." *Chapman*, 631 F.3d at 947 (quoting 42 U.S.C. § 12182(a)). In other words, the barrier must "mak[e] his use of the facility more difficult than a nondisabled person's." *Id.* at 947 n.4. Sepulveda declares that the defective parking space "caused [him] difficulties in finding a safe place to park, safely exit [his] vehicle, and reach the entrance safely"; he feared that his walker could roll away or that he could fall when he exited his vehicle due to the insufficiently level space and access aisle. Sepulveda Decl. ¶ 4(a). As to the entrance door, Sepulveda states that he "had difficulty in finding and using an accessible entrance." *Id.* ¶ 4(b). Lakeshore does not offer any evidence to dispute Sepulveda's personal experience. The court concludes that Sepulveda may seek Rule 56 relief for his claims related to the lack of an accessible parking space and appropriate signage.

1 On the other hand, Sepulveda cannot move for summary judgment on the additional barriers that Sepulveda references for the first time in his motion. *See* Mot. at 9, 16 (citing to the Cortez Report and claiming ADAAG violations to countertop, urinal, hot water pipes in restroom, faucet controls, damaged floor mats, and indoor turning radius). Sepulveda made no mention of these violations in his complaint or proposed FAC, which only refer to the parking space and signage issues. Compl. ¶ 4. Sepulveda thus failed to "give the defendants fair notice that the barriers listed for the first time in the expert report were grounds for his claim of discrimination under the ADA," as required by Federal Rule of Civil Procedure 8. *Oliver*, 654 F.3d at 908. "[F]or purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair notice of barriers identified elsewhere." *Id.* at 909. "In general, only disclosures of barriers in a properly pleaded complaint can provide such notice; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute." *Id.* The new barriers are thus not properly before the court.

If Sepulveda wanted to challenge additional barriers, he could have done so when he moved to amend his complaint on June 3, 2021, long after the Cortez Report was prepared. Pl.'s Mot. for Leave [Docket 24]. Sepulveda's proposed FAC does not mention the additional barriers he challenges here; instead, he sought to add claims related to a food truck and an outdoor seating area. Proposed FAC [Docket 24-2] ¶ 7. The court denied Sepulveda's motion with leave to amend by August 5, 2021. [Docket 39.] Sepulveda did not submit a new amended complaint and instead filed this motion for summary judgment in which he first identifies the new barriers. The court will not consider them. *See, e.g.*, *Johnson v. Gallup & Whalen Santa Maria*, No. 17-1191-SI, 2018 WL 2183254, at \*5 (N.D. Cal. May 11, 2018) (denying leave to amend at summary judgment to add violations identified by an expert because "adding new barriers that plaintiff had not identified previously at such a late stage of the case deprives defendants of notice"); *Moeller v. Taco Bell Corp.*, 966 F. Supp. 2d 899, 902 (N.D. Cal. 2013) (declining at summary judgment to assess alleged barriers identified during discovery, as "to the extent that the FAC does not identify specific barriers encountered by specific plaintiffs at specific stores, those claims are not presently

8

in the case"); *Paulick v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 10-01919-JCS, 2012 WL 2990760, at *13 (N.D. Cal. July 20, 2012) ("Clearly, there must be a point at which a defendant facing claims under the ADA can be certain that all of the barriers at issue in the case have been identified. The requirement under *Oliver* that all barriers upon which a plaintiff wishes to proceed must be identified in the complaint supports the conclusion that that point is the deadline for amending the complaint.").[5]

### 2. Applicable ADAAG Standards

The court must first identify the applicable ADAAG standards in order to determine whether Sepulveda has established a violation of those standards with respect to the two challenged barriers.

Sepulveda asserts that Lakeshore's accessibility barriers violate both the 1991 and 2010 ADAAG standards. Mot. at 8-9, 15-17. He explains that "facilities altered after March 15, 2011 are required to comply with the 2010 Standards." *Id.* at 16 (citing 28 C.F.R. § 36.406). In opposition, Lakeshore declares that "there had not been any construction or alteration since at least when [Defendant Sam Ng] acquired the property from the 76 Franchise in 2005, before the effective date of the 2010 ADAAG." Opp'n at 3; *see* Ng Decl. ¶ 3. Lakeshore argues that as a consequence, the 2010 requirements do not apply because "[t]he safe harbor provision in the 2010 ADAAG deems existing structures not in violation if they comply with the 1991 ADA standard." Opp'n at 3.

The ADAAG standards "lay out the technical structural requirements of places of public accommodations." *Chapman*, 631 F.3d at 945. When Congress enacted the ADA in 1991, it directed the Department of Justice to issue interpretive regulations consistent with guidelines published by the Architectural and Transportation Barriers Compliance Board (the Access Board), an independent federal agency. *Kirola v. City & Cty. of S.F.*, 860 F.3d 1164, 1176-77 (9th Cir.

---

[5] This court previously evaluated at summary judgment claims against barriers that were detailed in an expert report because the defects were alleged in the amended complaint, albeit unartfully. *Barrilleaux v. Mendocino Cty.*, No. 14-1373-DMR, 2018 WL 3585133, at *10 (N.D. Cal. July 26, 2018). In contrast, as noted above, Sepulveda makes no mention of the additional barriers in his complaint or proposed FAC.

2017); *Miller v. Cal. Speedway Co.*, 536 F.3d 1030, 1025-26 (9th Cir. 2008). The Department of Justice adopted the 1991 ADAAG standards promulgated by the Access Board; although the Access Board subsequently issued revisions, "the only binding ADAAG requirements were the original ones adopted in 1991." *Kirola*, 860 F.3d at 1177.

"In 2004, the Access Board published a wholesale revamp of ADAAG. Again, the new regulations were not then binding. But on September 15, 2010, DOJ updated its accessibility regulations by incorporating the 2004 ADAAG standards with slight variations." *Kirola*, 860 F.3d at 1177. The new guidelines, which went into effect on March 15, 2012, "explicitly contain a 'safe harbor' provision, however, which provides that accommodations, which have not been altered in existing facilities on or after March 15, 2012, and *that complied with the 1991 guidelines*, are not required to be modified to conform to the 2010 standards." *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (emphasis added). The safe harbor, codified at 28 C.F.R. § 26.304(d)(2), provides:

> (i) Safe harbor. Elements that have not been altered in existing facilities on or after March 15, 2012 and that *comply with the corresponding technical and scoping specifications for those elements in the 1991 Standards are not required to be modified* in order to comply with the requirements set forth in the 2010 Standards.
>
> [ . . .]
>
> (B) On or after March 15, 2012, elements in existing facilities that *do not comply with the corresponding technical and scoping specifications for those elements in the 1991 Standards must be modified to the extent readily achievable to comply with the requirements set forth in the 2010 Standards.* Noncomplying newly constructed and altered elements may also be subject to the requirements of § 36.406(a)(5). (Emphasis added).

In sum, where no alteration to the establishment has occurred on or after March 15, 2012, "elements in the [facility] are actionable barriers only if they fail to comply with the 1991 ADAAG Standards." *Lane v. Landmark Theatre Corp.*, No. 16-CV-06790-BLF, 2020 WL 1976420, at *13 (N.D. Cal. Apr. 24, 2020). In other words, "Defendants are liable for failing to fix the barriers alleged by Plaintiffs if and only if (1) the Item constitutes a violation of the 1991 ADAAG Standards, and (2) it is 'readily achievable' to modify the element to comply with the 2010 ADAAG Standards." *Id. See, e.g.*, *Johnson v. Wayside Prop., Inc.*, 41 F. Supp. 3d 973, 976

10

n.3 (E.D. Cal. 2014) (declaring that a property could only be held liable for barriers that failed to comply with the 1991 ADAAG standards absent evidence of structural alterations to the property between March 15, 2012 and the date of plaintiff's first visit).

Here, Sepulveda argues that the two challenged barriers violate both the 2010 and 1991 ADAAG accessibility standards. However, he offers no foundational evidence to establish that the property was constructed or altered since 2012, which would trigger Lakeshore's obligation to meet the 2010 standards. The Cortez Report does not help Sepulveda because it expressly disclaims that "no clear history of construction permits of the property can be obtained." Cortez Report at 3. Cortez bases his report on the 2010 ADAAG standards even though there is no record evidence to support their application. *Id.*

According to Lakeshore, Defendant Ng has not altered the property since purchasing it in 2005. Opp'n at 3; Ng Decl. ¶ 3. Sepulveda offers no contrary evidence.[6] The unrebutted record therefore demonstrates that any alterations to the property predated 2005, thereby rendering the 2010 ADAAG standards inapplicable.

The court therefore turns to the 1991 ADAAG standards to determine if the challenged barriers violate the 1991 standards, and if so, whether it is readily achievable for Lakeshore to modify them to comply with the 2010 standards. *See* 28 C.F.R. § 26.304(d)(2)(i).

### a. Parking Space

Sepulveda contends that the accessible parking space is "defective" under the 1991 ADAAG standards. Mot. at 8; Sepulveda Decl. ¶ 4(a). He claims that the violation "caused [him] difficulties in finding a safe place to park, safely exit [his] vehicle, and reach the entrance safely"; that because of the excessive slope, his walker could "roll away while [he is] arranging to get out of [his] car" and could "cause [him] to fall." Sepulveda Decl. ¶ 4(a).[7] Sepulveda cannot rely on

---

[6] Sepulveda points to allegations in his complaint that on information and belief, the property has undergone construction or alterations since 1970, Compl. ¶ 2; Reply at 2. Allegations are not evidence and are insufficient at this stage. *See* Fed. R. Civ. P. 56(c)(1)(A).

[7] Sepulveda also contends that on later visits to Lakeshore, the gas station had placed cones on the accessible parking space to park cars there that were under repair at the adjacent mechanic's shop, which amounted to a "practice and a policy of discrimination that effectively deprived plaintiff of the use of the parking space." Mot. at 8-9; Sepulveda Decl. ¶ 4(a); *see also* Cortez Decl. ¶ 10.

11

Cortez's evidence to establish a violation because Cortez explicitly relied on the 2010 (not 1991) ADAAG standards relating to parking spaces. Cortez Report at 8-9.[8]

Sepulveda points to several 1991 ADAAG standards related to parking that he contends Lakeshore violated. Mot. at 8. 1991 ADAAG §§ 4.1.2(5)(b) and 4.6.3 require that accessible parking spaces, accessible passenger loading zones, and their respective access aisles "shall be level with surface slopes not exceeding 1:50 (2%) in all directions."[9] The 1991 ADAAG § 4.1.2(5)(b) on "Accessible Sites and Exterior Facilities: New Construction" requires a "van accessible" space in "[o]ne in every eight accessible spaces, but not less than one."

The parties do not dispute that the cross slope on the accessible aisle parking space exceeds two percent, the amount allowed under the 1991 ADAAG standard. *See* Mot. at 16; Cortez Report at 8 (item 4.7); Opp'n at 3.[10] Nevertheless, Sepulveda is not entitled to summary judgment on the parking space violation. Under the 2010 ADAAG safe harbor, Lakeshore is only required to fix the cross slope to comply with the 2010 ADAAG standards if remediation is readily achievable. *See* 28 C.F.R. § 26.304(d)(2)(ii)(B). While Lakeshore bears the ultimate burden of persuasion on this defense, Sepulveda has not satisfied his initial burden to plausibly show that the cost of removal does not exceed the benefits. *See Lopez*, 974 F.3d at 1040. Sepulveda does not address the safe harbor provision or the "readily achievable" standard; in fact, his evidence suggests that remediation may not be readily achievable for Lakeshore. Cortez concluded that remedying the

---

Sepulveda does not explain his claim relating to the cones nor does he point to any legal authority to establish a violation. The court declines to address this, as it is not the court's job to figure out what Plaintiff's arguments could be.

[8] The Cortez declaration identifies one condition (parking space access aisle) as not complying with the 1991 standards, but his report only indicates a 2010 ADAAG violation for this item. *Compare* Cortez Decl. ¶ 6(c), *with* Cortez Report at 6 (item 2.12). No other 1991 ADAAG violation is noted in the Cortez Report.

[9] The 1991 ADAAG standards cited herein are available at *ADA Accessibility Guidelines (ADAAG)*, U.S. Access Board, https://www.access-board.gov/adaag-1991-2002.html (last visited October 28, 2021).

[10] As to the van accessible space, Lakeshore is correct that the 1991 ADAAG standard does not require a *passenger* access aisle that is 96 inches wide, despite Sepulveda's contrary contention. Mot. at 8; Opp'n at 3. Furthermore, 1991 ADAAG § 4.1.2(5)(b) applies to "New Construction." There is no record evidence that Lakeshore was newly constructed within the meaning of this standard.

parking lot would require "capital improvements on the facility." Cortez Report at 8 (items 4.1, 4.2, 4.4, 4.7); *see id.* at 3 (defining "CI" on the report). Elsewhere Cortez found that "[T]he topography of the site is incredibly challenging to provide an accessible path of travel" and that the "Site is very difficult to make it compliant." Cortez Report at 3, 8. He concluded that "the accessible parking stall is in the most appropriate location in the lot. Providing an accessible path of travel to the cashier and retail shop will require an excessive amount of work that may hinder free circulation within the lot." *Id.* at 3. His opinion suggests that fixing the excessively sloped parking space may obligate costs exceeding the benefits. *See Lopez*, 974 F.3d at 1040. For all the foregoing reasons, the court denies summary judgment on Sepulveda's ADA claim as to the parking lot violation.

### b. Entrance door signage

Sepulveda claims that the "primary Business entrance door," alternatively described as the "front door," lacks the appropriate posted sign with the International Symbol of Accessibility ("ISA"). Mot. at 8; Sepulveda Decl. ¶ 4(b). The Cortez Report does not discuss the lack of entrance signage. Lakeshore argues in opposition that "warning signages" are not encompassed within the 1991 ADAAG standards. The 1991 standards do in fact contain certain signage requirements, but Sepulveda has not established that Lakeshore violated any of them.

Sepulveda directs the court, without analysis, to ADAAG §§ 4.30.7*(1) and 4.30.6. Mot. at 8. Section 4.30.7 requires signage in certain newly designed, constructed or altered buildings.[11] This section does not necessarily apply here because as discussed above, Sepulveda does not point to any evidence that Lakeshore is a newly designed, constructed, or altered building. Section 4.30.6 also does not advance Sepulveda's claim. It specifies how to mount a sign when a sign is required; it is silent on the question of where and when signs are required to be posted.[12] The

---

[11] Section 4.30.7*(1) cross-references § 4.1, which defines certain facilities as "[a]ll areas of newly designed or newly constructed buildings and facilities and altered portions of existing buildings and facilities … unless otherwise provided in this section or as modified in a special application section."

[12] *See, e.g., Strong v. Horton Plaza, LP*, No. 09-2901-JM, 2010 WL 11508760, at *3 (S.D. Cal. Apr. 27, 2010) (ADAAG § 4.30.6 only "relate[s] to the appearance and placement of existing

13

1  court also considers § 4.1.2(7) even though Sepulveda did not identify it because it is more
2  directly on point. It states that "Elements and spaces of accessible facilities which shall be
3  identified by the [ISA] and which shall comply with 4.30.7 are … c. [A]ccessible entrances when
4  not all are accessible (inaccessible entrances shall have directional signate to indicate the route to
5  the nearest accessible entrance.)" Section 4.1.2(7) "clearly requires that, when not all entrances to
6  a commercial facility are accessible, those that are must be identified by an ISA." *Jones v. Dollar*
7  *Tree Stores, Inc.*, No. 204-2002 MCE WL 1409667, at *5 (E.D. Cal. May 19, 2006). Here,
8  Sepulveda has not demonstrated that there are multiple entrances to Lakeshore, at least one of
9  which is not accessible. In fact, the record indicates that there is only one front door, and that it is
10 accessible. Sepulveda Decl. ¶ 4(b) (referring to "primary Business entrance door"); Cortez Report
11 at 20 (Item 9.1) (indicating that entrance is accessible to persons with disabilities). In sum,
12 Sepulveda has failed to establish a signage violation. Summary judgment on Sepulveda's ADA
13 claim as to the alleged signage barrier is therefore denied.

### B. State Law Claims

Sepulveda also moves for summary judgment on his claims under the Unruh Civil Rights Act, CDPA, and California Health and Safety Code section 19955 *et seq.* Mot. at 17-18, 20-22. A violation of the right of any individual under the ADA constitutes a violation of the Unruh Act and the CDPA. *Moeller*, 816 F. Supp. 2d at 848 (citing Cal. Civ. Code §§ 51(f); 54(c)). Both the Unruh Act and the CDPA authorize statutory damages to plaintiffs denied equal access. Cal. Civ. Code §§ 52(a); 55.56(a). To the extent that Sepulveda seeks to establish state law violations based on ADA violations, summary judgment is denied because he has not succeeded on his ADA claims.

Sepulveda's remaining state law theories rely on his ability to establish a violation of the California Health and Safety Code and/or the California Building Code. A California Building Code violation also constitutes a violation of the Unruh Act and the CDPA. *Moeller*, 816 F. Supp.

---

signs[;] they do not require the posting of an accessibility sign"); *Rush v. Hyun Suk Kim*, 908 F. Supp. 2d 1117, 1121 (C.D. Cal. 2012) ("§ 4.30.6 only applies to signs displaying permanent identification for rooms and spaces. ISAs must only comply with § 4.30.7, which provides no requirements related to distance off the floor, obstructions, or height.").

2d at 848.  California Health & Safety Code section 19955 requires that public accommodations constructed or altered after July 1, 1970 adhere to the applicable state architect's accessibility standards.  *Lane*, 2020 WL 1976420, at *22.  Determining the appropriate standard depends on the application date for building permit, or the date construction is commenced if no permit is required.  *Id.*  Since December 31, 1981, the accessibility standards have been set forth in the California Building Code, Title 24 of the California Code of Regulations.  *Moeller*, 816 F. Supp. 2d at 847.  Alterations to buildings made only between 1970 and 1981 are subject to certain "temporary standards" provided in the California Government Code.  *See Lane*, 2020 WL 1976420, at *21-22.  The California Building Code governs all alterations conducted after its enactment on December 31, 1981.  *See id.* at *24; *Rodriguez*, 10 F. Supp. 3d at 1086-87; *see, e.g.*, *Moeller*, 816 F. Supp. 2d at 848 ("Because Taco Bell 4518 was constructed in 1991, all elements must comply with Title 24, and the applicable standards are those promulgated in 1989.").

Sepulveda asserts multiple violations of the California Building Code, and the Cortez Report finds several items that do not comply with it.  Mot. at 16; Cortez Decl. ¶ 6.  However, Sepulveda supplies no evidence to demonstrate that Lakeshore was altered or constructed after 1970 for the purposes of the Health and Safety Code.  Nor does he supply evidence of alteration or construction after December 31, 1981 that would trigger the requirements of the California Building Code.  Absent this threshold information, the court cannot ascertain whether these provisions apply to establish Unruh Act, CDPA, or Health & Safety Code violations and thus denies summary judgment on those claims.  *See Yates v. Bacco*, No. 11-1573-DMR, 2014 WL 1089101, at *14 (N.D. Cal. 2014) ("No evidence in the record demonstrates that the building that houses Bacco was constructed on or after, or altered on or after, July 1, 1970, within the meaning of the statute. Plaintiff's post trial submissions do not address this statute. Therefore, Plaintiff is deemed to have abandoned his claim premised on Section 19955.").

## IV. CONCLUSION

For the foregoing reasons, Sepulveda's motion for summary judgment is denied.  The court observes that Sepulveda moved for summary judgment before the close of discovery.  The court only allows one summary judgment motion per side.  Therefore, Sepulveda is prohibited from

1  filing a further summary judgment motion.

2      The parties are ordered to appear for a case management conference on January 19, 2022 at

3  1:00 pm.  The updated joint case management conference statement is due on January 12, 2022.

6  **IT IS SO ORDERED.**

7  Dated: October 28, 2021



_____
Donna M. Ryu
United States Magistrate Judge